UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:15-cv-00568-MOC
(3:13-cr-00187-MOC-1)

| | |
|---|---|
| JOHN REID PERKINS, JR., ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on consideration of petitioner's pro se Motion to Vacate, Set Aside or Correct Sentence which is filed pursuant to 28 U.S.C. § 2255, and respondent's Motion for Summary Judgment. For the reasons that follow, respondent's Motion for Summary Judgment will be granted, and petitioner's Motion to Vacate will be therefore be denied and dismissed.

**FINDINGS AND CONCLUSIONS**

**I.     BACKGROUND**

On June 27, 2013, petitioner was the lone defendant charged in a bill of information with one count of conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371. That same day, petitioner filed a plea agreement in which he admitted he was in fact guilty of the securities fraud conspiracy. Petitioner further agreed, pursuant Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, that the amount of loss to his victims that was known to or reasonably foreseeable to him was more than $400,000, but less than $1,000,000. Petitioner also stipulated

that he understood that "loss" as that term is defined under § 2B1.1 of the <u>United Sentencing Guidelines Manual</u> (USSG), may differ from restitution that is ordered under 18 U.S.C. § 3556. (3:13-cr-00187, Doc. No. 2: Plea Agreement). In addition, petitioner agreed to "pay full restitution, regardless of the resulting loss amount, to all victims directly or indirectly harmed by defendant's 'relevant conduct,' including conduct pertaining to any dismissed counts or uncharged conduct, as defined by U.S.S.G. § 1B1.3, regardless of whether such conduct constitutes an 'offense,' under 18 U.S.C. §§ 2259, 3663, 3663A." (<u>Id.</u> ¶ 7). Petitioner also filed a Factual Basis on June 27, in which the parties agreed there was a factual basis to support his guilty plea. (<u>Id.</u>, Doc. No. 3).

Prior to his Plea and Rule 11 hearing, Petitioner filed written notice of waiver of indictment and his plea hearing was conducted on September 6, 2013, where petitioner was present with counsel and placed under oath. In responding to the magistrate judge's questions, Petitioner acknowledged that he had reviewed the one count charged in the bill of information with his counsel, and he acknowledged that he understood the elements of the offense and the potential penalties he faced upon conviction. Petitioner also acknowledged that he had discussed any possible defenses with counsel and he knew he could plead not guilty and contest the charges at trial before a jury, summon witnesses, and cross-examine the government's witnesses. Petitioner then acknowledged that he understood and agreed with the terms of his plea agreement; that he was satisfied with the services of his counsel; and that he was pleading guilty because was in fact guilty of the conduct charged in the bill of information. The court recorded petitioner's answers in writing and presented them to petitioner and counsel to review, and they agreed that the answers that petitioner had given under oath were true and they signed the

Acceptance of Plea form. The court then accepted the guilty plea after finding that it was knowing and voluntary and petitioner's case was then referred to the U.S. Probation Office for preparation of a presentence report (PSR). (Id., Doc. No. 9: Acceptance and Entry of Guilty Plea).

In the PSR, the probation officer included a detailed summary of petitioner's offense conduct to support the calculation of the Guidelines Range which included verbatim language from the Factual Basis noted above and is set forth as follows:

> 5. From in or about 2006 through in or about January 2008 defendant John Reid Perkins, Jr. ("PERKINS") conspired with individuals T.G., V.F., and others to engage in a securities fraud scheme. This scheme involved a variety of companies, including Master Home Solutions (MHS), and resulted in victims being defrauded of over $400,000.
>
> 6. PERKINS, T.G., V.F., and others induced victims to invest in MHS by making a series of false and fraudulent representations, omitting material facts, and telling deceptive halftruths. PERKINS, T.G., V.F., and others falsely led victims to believe that their money would be invested in MHS and that MHS would in turn invest in real estate projects. Victims were told that MHS owned several properties and that MHS was in the process of buying several additional properties. In truth and fact, MHS owned very few properties and neither PERKJNS, T.G., nor V.F. had any intention of purchasing additional properties.
>
> 7. Furthermore, very little, if any, victim money was invested in real estate projects. Rather, PERKINS , T.G., V.F., and others, (1) diverted victim money to themselves to support their personal lifestyles, which included, among other things, paying bills, buying cars, purchasing real estate, and withdrawing large amounts of cash; (2) diverted victim money to other victims in Ponzi fashion, falsely characterizing such payments as gains on investments in order to induce further investments by such victims; (3) faced with refund demands and withdrawal requests from

> old victims, diverted new victim money to the older
> victims in Ponzi fashion in order to conceal and prolong the
> scheme; and (4) to avoid fulfilling victim withdrawal
> requests, led victims to falsely believe their money was
> unavailable because the funds were tied up in investments
> that had specific maturity periods. In other instances,
> PERKINS, T.G., V.F., and others falsely advised victims to
> invest additional funds in order to secure the return of their
> original investment.

(Id., Doc. No. 37: PSR ¶¶ 5-7).

The probation officer calculated a base offense level of 24 and after adjusting for acceptance of responsibility, petitioner's Guidelines range was 46-57 months based on a total offense level of 21 and a criminal history category of IV. However, because the authorized statutory maximum was five years, the Guidelines range was adjusted to a term of 57-60 months. See USSG § 5G1.1(c)(1). (Id. ¶ 71). The probation officer also recommended that petitioner be ordered to pay $805,150 to the victims listed in the PSR pursuant to the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663A, and USSG § 5E1.1. (Id. ¶ 81).

Petitioner filed objections to the PSR contending that the loss amount sustained by the victims as detailed in paragraphs 11 and 81 of the PSR was too high, and he contended that some of the listed victims were not even affected by the conspiracy to defraud. Petitioner also complained that some of the alleged conduct occurred outside the relevant time frame of the conspiracy, and Petitioner challenged the amount of restitution and a two-level enhancement for employing sophisticated means in the conspiracy. The probation officer recommended no changes to the final PSR.

On February 9, 2015, petitioner appeared for his sentencing hearing and at the outset, the Court confirmed with petitioner that the answers he had given under oath before the magistrate

4

judge were true, that he would give those same answers if they were posed again during sentencing, and his counsel affirmed that he was satisfied petitioner understood the Rule 11 proceedings. Based on these representations, the Court found that petitioner's guilty plea was knowing and voluntary and that he understood the consequences of his plea and his guilty plea was reaffirmed. Next, the government presented the offense conduct as contained in the PSR and petitioner stipulated that the Court could rely on this conduct and the factual basis to support his entry of a guilty plea. The Court found that based on the stipulations of the parties, the voluntary nature of the plea and the offense conduct, that there was a factual basis for the plea and it was accepted and a verdict of guilty entered in the record. After hearing from the parties, the Court sustained Petitioner's objection to the two-level enhancement for employing sophisticated means which reduced his Guidelines range to 46-57 months. Petitioner was sentenced to a term of 50-months and ordered to pay the victims $805,150.00 in restitution, jointly and severally with a fellow participant in the conspiracy, Terry Wayne Gandy. (Id., Doc. No. 44: Judgment; Doc. No. 45: Statement of Reasons). Petitioner did not appeal.

In this collateral proceeding, petitioner raises claims of ineffective assistance of trial counsel and challenges to the fairness of his prosecution, and he contends his sentence should be set aside.

**II.     STANDARD OF REVIEW**

Summary judgment is appropriate in cases where there is no genuine dispute as to a material fact and it appears that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A court is bound to enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587. (1986). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (italics in original). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted).

**III.   DISCUSSION**

A.   Ineffective assistance of counsel

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the effective assistance of counsel to assist in his defense. U.S. Const. amend. VI. In order to prevail on a claim of ineffective assistance of counsel, a petitioner must show that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) the deficient performance was prejudicial to the defense. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In measuring counsel's performance, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . ." Id. at 689. A petitioner seeking post-conviction relief based on ineffective assistance bears a "heavy burden in overcoming this presumption." Carpenter v. United States, 720 F.2d 546, 548 (8th Cir. 1983). Conclusory allegations do not overcome the presumption of competency. Id.

To demonstrate prejudice in the context of a guilty plea, a petitioner must demonstrate "a

reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Petitioner "bears the burden of proving Strickland prejudice." Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992) (citing Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983), cert. denied, 464 U.S. 1065 (1984)). If petitioner fails to meet this burden, "a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297 (citing Strickland, 466 U.S. at 697). In considering the prejudice prong of the analysis, the Court must not grant relief solely because petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. See Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998). Rather, the Court "can only grant relief under the second prong of Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id. (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)).

1. Ground One

Petitioner first contends, murkily, that Liberty Bell Law Group and his trial counsel, Brian Aus failed to present all of the evidence related to his criminal case. Petitioner continues by alleging a victim in his scheme to defraud investors "harassed, extorted, and blackmailed" him. (3:15-cv-00568, Doc. No. 1: Motion to Vacate at 4). Petitioner's contentions here are simply conclusory and in no way alert this Court as to how he suffered prejudice, much less deficient performance of counsel. In sum, petitioner bears the burden of demonstrating a right to collateral relief and he has simply failed to meet that burden here. See, e.g., United States v. Turcotte, 405 F.3d 515, 537 (7th Cir. 2005) (rejecting conclusory allegations). Accordingly, this claim will be dismissed.

7

2. Ground Two

Next, petitioner contends that Liberty Bell Law Group labored under a conflict of interest in allowing petitioner's former girlfriend, Ms. Locklear, to hire the group to represent him. (Motion to Vacate at 5). It is not the province of the habeas court to fashion meaningful arguments on behalf of a petitioner; but rather it is a petitioner's burden to present a reasonable argument as to how he was prejudiced and that the conduct fell below a reasonable standard for an attorney. This claim will be denied as without foundation and meritless.

B.   Ground Three

Here, petitioner again complains about Ms. Locklear's alleged behavior in blackmailing him, among other things, and harassing him by informing the U.S. Marshals Service that he was an escape risk. (Motion to Vacate at 7).

Section 2255 collateral proceedings are limited to the determination of whether a "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . ." 28 U.S.C. § 2255(a).[1] It is impossible to discern how the conduct of Ms. Locklear could provide petitioner with a reasonable avenue in which to challenge the legality of his conviction or sentence.

To the extent petitioner may contend that her conduct rendered the validity of his guilty plea invalid, this argument must fail as he swore that no one had threatened, coerced, or forced

---

[1] As the Government observes in its response, this limitation on collateral relief applies equally well to petitioner's conclusory arguments regarding his attorney's effort in establishing restitution. In other words, because restitution does not implicate the fact of his conviction or confinement, it is non-cognizable on collateral review. (Doc. No. 7: Government Response at 9) (citing Kaminski v. United States, 339 F.3d 84, 85 n.1 (2d Cir.), cert. denied, 540 U.S. 1084 (2003).

him into pleading guilty. (3:13-cr-00187, Doc. No. 9: Acceptance and Entry of Guilt Plea ¶ 29). It is well-settled that a petitioner is bound by the sworn statements that he makes during a properly conducted Rule 11 hearing and as this Court found during sentencing, and reaffirms herein, Petitioner's Rule 11 hearing was properly conducted. See, e.g., Blackledge v. Allison, 431 U.S. 63, 73-74 (1977) ("For the representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity."); United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005).

    C.    Ground Four

In his final claim for relief, petitioner maintains that he signed the bill of information based on his belief (mistaken), that in so doing he would receive a departure based on substantial assistance. (Motion to Vacate at 8). This argument will be rejected for two reasons.

First, as noted herein, petitioner averred during his Rule 11 hearing, and reaffirmed during his sentencing hearing, that no one had promised him anything in exchange for pleading guilty to the one count in his bill of information.

Second, petitioner does not contend, nor can he, that the government made a promise in his plea agreement with regard to filing a motion for downward departure based on substantial assistance. See United States v. Raynor, 939 F.2d 191, 195 (4th Cir. 1991); United States v. Lockhart, 58 F.3d 86, 88 (4th Cir. 1995). With no evidence that the government breached the plea agreement, petitioner's claim for relief is doomed as it is within the government's sole discretion in deciding whether to file a § 5K motion based on substantial assistance. See United

States v. Francois, 889 F.2d 1341, 1343-44 (4th Cir. 1989), cert. denied, 494 U.S. 1085 (1990) (citing United States v. Musser, 856 F.2d 1484 (11th Cir. 1988)).

For these reasons, this claim for relief will be dismissed.

IV. CONCLUSION

Based on the foregoing, the Court finds that Petitioner's § 2255 motion to vacate is without merit and it will be dismissed.

**ORDER**

**IT IS, THEREFORE, ORDERED** that:

1. Respondent's Motion for Summary Judgment is **GRANTED**. (Doc. No. 7)

2. Petitioner's Motion for an Evidentiary Hearing is **DENIED**. (#14)

3. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 is **DENIED and DISMISSED WITH PREJUDICE**. (Doc. No. 1).

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

The Clerk is respectfully directed to close this civil case.

**SO ORDERED**.

Signed: February 22, 2017

Max O. Cogburn Jr.
United States District Judge